IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - x
INFORMED CONSENT ACTION NETWORK,

                              CA No:  1:23-cv-00219-RBW

              Plaintiff,

                              Washington, D.C.
                              Monday, November 20, 2023
vs.                           9:00 a.m.


UNITED STATES FOOD AND DRUG
ADMINISTRATION,

              Defendant.
- - - - - - - - - - - - - - - - - x
_____

TRANSCRIPT OF TELEPHONIC MOTION HEARING
HELD BEFORE THE HONORABLE REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:


For the Plaintiff:        **ELIZABETH ANN BREHM, ESQ.**
                          **SIRI & GLIMSTAD LLP**
                          745 Fifth Avenue, Suite 500
                          New York, NY 10151
                          (212) 532-1091
                          ebrehm@sirillp.com


For the Defendant:        **BRIAN J. LEVY, ESQ.**
                          **DOJ-USAO**
                          601 D Street NW
                          Washington, DC 20530
                          (202) 252-6734
                          brian.levy2@usdoj.gov


Court Reporter:               Lisa A. Moreira, RDR, CRR
                              Official Court Reporter
                              U.S. Courthouse, Room 6718
                              333 Constitution Avenue, NW
                              Washington, DC  20001
                              (202) 354-3187

P R O C E E D I N G S

THE COURTROOM DEPUTY:  This is Civil Action 23-219, *Informed Consent Action Network vs. United States Food and Drug Administration.*

May I have counsel identify themselves for the record beginning with plaintiff's counsel.

MS. BREHM:  Sure.  Good morning.  This is Elizabeth Brehm on behalf of Informed Consent Action Network, the plaintiff.

THE COURT:  Good morning.

MR. LEVY:  Hi.  Good morning.  This is Brian Levy. I represent the defendant.  It's my understanding that two individuals from the client are going to try to dial in to listen; so if somebody joins, that's who I expect it to be.

THE COURT:  Very well.  They obviously have a right to listen in, if they desire to do so.

This matter is here on the defendant's motion for an 18-month stay, and I guess I'll hear from actually the plaintiff's counsel as to why that request is not reasonable considering the exorbitant amount of documents that the defendant has been required to produce in other litigation down in Texas.

MS. BREHM:  Sure, Your Honor.  I'm happy to address that.

So plaintiff contends that the agency has failed

to make a showing for a stay.  There's multiple reasons for that.

The first being that they need to show exceptional circumstances.  And they also need to show due diligence as is applied to this specific request at issue, and --

THE COURT:  Let me cut you off.  Why aren't there exceptional circumstances?

I must admit that I would never -- being involved in as much FOIA litigation as I'm involved in here in D.C., I would never order the amount of production that's been ordered.  But nonetheless, the judge has the authority to do what he or she did, and I just know that from my experience handling -- I mean, probably a third or a half of my calendar are FOIA cases now, and the defendant is overwhelmed.

And I think obviously the law has a laudable objective, but unfortunately Congress doesn't appropriate the funds needed in order for the government to process all of these applications that are being made as expeditiously as the production hopefully would occur.

But it just seems to me, considering the amount of documents that have been ordered in litigation that was commenced prior to this litigation or at least the orders were issued prior to this matter coming before me, I just don't know what I'd do because if I don't grant the

government's request, then it seems to me I'm then undermining the authority of the judge who's already issued an order.  And I just have concerns about doing that despite the fact that I think that the extent of the order really, under the circumstances, is unreasonable.

MS. BREHM:  So a few points in response to that.

And I think one of the most important things that you mentioned is that, you know, Congress is the one that did create this law, and unfortunately, you know, we didn't write it.  I understand the pressure points that the agency is facing, but as it stands, that is the law, and those are the rules we have to play by.

And part of the exceptional circumstances is that the agency must show that this was like an unpredictable workload, and even according to the agency's own declaration and briefing in this case, the agency saw an uptick -- started to see an uptick in their FOIA activities and requests in 2019.  That was prior, months prior, to any of the orders in the PHMPT two cases, which is what Your Honor is referencing, and in Texas it's a large volume of documents.

CBER, which is the center at FDA that is at issue here, appears to have done nothing until after that court order to start marshalling resources to address this uptick in at the time what should have been predictable increases

in FOIA.

And, again, I would not necessarily want to be on the receiving end of these requests from the agency's perspective, but I think the agency, of course, has the right to go back to Congress and ask for more funding on top of its $3.4 billion discretionary budget that it had in 2022, 163 -- just shy of 163 full-time FOIA staff, and they can seek more funding, or they can seek a change in the law.

But as the law currently stands, in order to show exceptional circumstances, it must be for the relevant time period.  And the FDA's papers have shown that they've known about this uptick and have been able to see it happening since 2019.

So we're now four years later, and the agency is arguing that had we not filed suit we should just wait on line behind 357 other requests with an estimated date of completion 18 to 24 months at best.  So plaintiff just contends that that is a complete violation of FOIA and Congress's intent behind FOIA.  So --

THE COURT:  In reference to the agency getting more money, good luck in that.  I mean, Congress can't even enact a budget, so the fact that they're going to give more money when you've got forces trying to reduce the amount of money made available to federal agencies I think is a pipe dream.

But I'll hear from government counsel.

MR. LEVY:  Yes, Your Honor.  So I think that there's a conflation here between what plaintiff counsel called the uptick and PHMPT.  One is kind of an increase in background traffic, and one is a 20-car pile-up, and no one here is saying that the exceptional circumstances are the uptick.

It's the PHMPT that has put a spin on the works -- on everything.  Right?  The backlog increases because there is this order that's taking basically the entire branch's work.

And so I'd understand if we had come here and said, you know, since 2019 the demands have been steadily increasing, and resources haven't increased, and that's just life.  That would be a much -- a much more difficult and probably losing argument.

But here, as Your Honor noted, the issue is this order, and the uptick is just to demonstrate that it's not as though the other FOIA demands have gone away.  Right?  You can imagine a circumstance where it just so happens that PHMPT is the only FOIA request, and therefore these guys can fit in alongside, but there's just the same background noise in addition to the traffic jam.

If Your Honor has any further question, I'd be glad to address them.

THE COURT:  I'm trying to see.  The orders issued by the Court down in Texas were issued when?  Back in the summer?  Is that right?

MS. BREHM:  Your Honor, the PHMPT 1 order was in January 2022, and the final order on production for PHMPT 2 in the second litigation was June 12th of 2023, and it does not call for completion of those records until mid-2025.

THE COURT:  Okay.  Well, on --

MS. BREHM:  If I may?

THE COURT:  Yes, you may.

MS. BREHM:  Thank you.

I just want to also point out, of course, which is in our papers, that the showing of exceptional circumstances also must exist with the agency showing that it has exercised due diligence in responding to the request at issue.  And, again, from the onset of this request -- this request was wholly denied by the agency without having culled or searched for any processed records, and only because our client appealed that did this progress.  And then the appeal was not answered in the timeliness it needed to be pursuant to FOIA, which is what brought about this litigation.

And now since the start of this litigation the government has identified 150 records that it has been holding since May, is when it informed our client that it

has identified 75 Excel spreadsheets, 75 emails.  Even in the past six months the agency has not made any effort or offered to make a rolling production or to produce at minimum those already identified 150 records.

So as more -- fully detailed in our opposition is the argument that it just shows a complete lack of due diligence in what the agency is able to do in response to this specific request.

THE COURT:  What's the agency's response to that?

MR. LEVY:  Your Honor, I don't think that the due diligence showing is that stringent.  If you look at the Democracy Forward Foundation -- I'm sorry, my throat is a little froggy -- Democracy Forward Foundation case, it states it is not the role of the judiciary to question how executive agencies request and allocate resources, and the due diligence goes to, you know, the incredible efforts that FDA has made to hire employees and train employees.

So I think specifically as to the documents in this case, not everyone can go first.  It would be great if we could slice a little bit of everyone in, but the bulk, if not the entirety, of the agency's resources are going to be with PHMPT; so we can't cut little pieces off here and there for everyone.

THE COURT:  I know you do set forth in your submission some facts regarding efforts that were taken by

the agency to increase the capacity to process these documents, but do you want to weigh in on that as to what's been done in that regard?

MR. LEVY:  Sure, Your Honor.  I mean, they were hiring I think nine or more FTEs and contractors, and I think that this has to do with kind of the competing narrative, which is, as plaintiff's counsel said, how could they not have done this until PHMPT?  And as you know, our position is that was an extraordinary unforeseen order, and taking steps directly in response to that is, you know, I think above and beyond the showing of due diligence that's necessary for (inaudible) stay.

THE COURT:  Okay.  Anything else before I rule?

MS. BREHM:  No, Your Honor.

THE COURT:  Okay.  Well --

MR. LEVY:  No, Your Honor.

THE COURT:  -- I mean, I think it is unfortunate. I mean, I'm very frustrated in the litigation I have here because I have cases where there's hundreds and thousands of documents that need to be processed, and I've got cases that have been on my calendar for years because of the inability of the cases -- the documents to be processed because of the limited resources that the agency has available in order to do the processing consistent with what the law requires.

I think it's obviously unfortunate, but

unfortunately to a large degree we have a dysfunctional government that, you know, doesn't have, it seems, the capacity to address some of these issues related to legislation that Congress has passed. And I, you know, would have to conclude that the unfortunate reality is that -- I mean, the government has, in fact, made an effort to increase its capacity to process documents where requests are made to this agency pursuant to FOIA, and realistically I have no reason to believe that, you know, greater efforts would have resulted in greater resources considering the current status of our governmental function and the ability of the government, as far as the executive and legislative branch are concerned, to allocate funding to address issues that need to be addressed pursuant to legislation adopted by the two other political branches of government.

So unfortunately I would have to conclude that because of the extraordinary orders that have been issued by the Courts down in Texas regarding these two matters requiring just an exorbitant amount of document production within a relatively short period of time considering the number of documents involved and all of the other litigation I know that agencies have, I would have to conclude that extraordinary circumstances have been established, and based upon the representations made by government counsel in its opposition -- I'm sorry, in its motion I would have to

conclude that it has exercised due diligence in order to comply with its obligations under the statute.

However, while I'll grant the request for the stay based upon the information that's been presented, I'm going to schedule this matter for a review every six months with the hope that conceivably something will change, and these documents can be processed sooner than anticipated.

But even though we're talking about a limited number of documents when there are other orders that have been issued prior to the orders that I'm being asked to issue, I just think it's inappropriate -- as I say, despite my feelings that the orders that were previously issued in those other cases are, it would seem, unreasonable and nonetheless the judges have the authority to issue the orders, I don't think it would be appropriate for me to undermine those orders, despite my perspective, by ordering the government to process documents in this case that would mean they would have to be given priority over orders that were previously issued by other courts.

So over objection, I will grant the motion for the stay. But I will continue the matter to get an update from the government, and the government should be in a position to let me know where you are in reference to processing those other documents so I can reassess whether the 18-month stay should remain in effect.

So we'll continue this matter until May 24th at 9:00.  Is that good?

MR. LEVY:  Yes, Your Honor.

MS. BREHM:  Yes, Your Honor.

THE COURT:  Thank you.

(Whereupon the hearing was

concluded at 9:15 a.m.)


**CERTIFICATE OF OFFICIAL COURT REPORTER**


I, LISA A. MOREIRA, RDR, CRR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

**NOTE:**  This hearing was held remotely by Zoom or some other virtual platform and is subject to the technological limitations of court reporting remotely.

Dated this 20th day of November, 2023.


/s/Lisa A. Moreira, RDR, CRR
Official Court Reporter
United States Courthouse
Room 6718
333 Constitution Avenue, NW
Washington, DC 20001