UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| INFORMED CONSENT ACTION NETWORK, | ) | |
| Plaintiff, | ) | Civil Action |
| vs. | ) | No. 23-219 |
| | ) | |
| UNITED STATES FOOD AND DRUG | ) | May 24, 2024 |
| ADMINISTRATION, | ) | 8:59 a.m. |
| Defendant. | ) | Washington, D.C. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**TRANSCRIPT OF STATUS CONFERENCE**
**BEFORE THE HONORABLE REGGIE B. WALTON,**
**UNITED STATES DISTRICT COURT SENIOR JUDGE**

**<u>APPEARANCES</u>:**

FOR THE PLAINTIFFS:

      ELIZABETH ANN BREHM
      ALLISON LUCAS
      Siri & Glimstad LLP
      745 Fifth Avenue, Suite 500
      New York, NY 10151
      (212) 532-1091
      Email: ebrehm@sirillp.com

FOR THE DEFENSE:    BRIAN J. LEVY
      DOJ-USAO
      601 D Street NW
      Washington, DC 20530
      (202) 252-6734
      Email: brian.levy2@usdoj.gov

Court Reporter:    Elizabeth Saint-Loth, RPR, FCRR
      Official Court Reporter
      U.S. Courthouse

This hearing was held via videoconference and/or telephonically and is, therefore, subject to the limitations associated with audio difficulties while using technology, i.e., audio feedback, static interference, etc.

Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

THE COURT:  This is Civil Action 23-219, Informed Consent Action Network versus the United States Food and Drug Administration.

May I have counsel identify themselves for the record, please, beginning with plaintiff's counsel.

MS. BREHM:  Good morning, Your Honor. This is Elizabeth Brehm for Informed Consent Action Network from Siri & Glimstad, and my colleague Allison Lucas is also on the line.

THE COURT:  Good morning.

MS. BREHM:  Good morning.

MR. LEVY:  Your Honor, this is Brian Levy.  I represent the defendant.  Good morning.

THE COURT:  Good morning.

What's our situation now?  Do you have a report back on what the situation is out in Texas?

MR. LEVY:  Yes, Your Honor.

So the situation is as we described in the original motion to stay.  As you may recall, there are two cases, PHMPT 1 and PHMPT 2.

At the time of the motion to stay, we were under a court order to provide roughly 90,000 or 110,000 pages, mostly in the first step [sic], as I understand, up until a certain point.  And since December 2023, we have been

ordered to provide 180,000 pages a month for PHMPT 2.  We have been hiring contractors to try to deal with that load.  It takes time to fully set them up.

Even though the production -- we represent the production is complete for PHMPT 1.  The plaintiff still has questions about the productions, so we are actually doing more now than we were at the time we sought the stay.  We are adding more resources now than at the time we sought the stay.  And this is all as -- what was anticipated when Your Honor granted the stay.

THE COURT:  What are you proposing now?

MR. LEVY:  When we originally sought the stay, I believe 18 months.  Because the PHMPT 2 order goes until mid-2025.  And it's really -- the agency is trying, with all its might, to meet that, but that's a very aggressive deadline that we set.  It's unlikely that resources will be freed up to deal with cases that are not part of PHMPT -- until that time.  So I think what we would recommend is another six months and have a status conference to confirm that things are proceeding as we said -- as we represented and as we're required to do under those court orders.

THE COURT:  Any response from the plaintiff?

MS. BREHM:  Yes, Your Honor.

I don't disagree with what agency counsel in DOJ is sharing about PHMPT 1 and 2.

However, I will note that if that -- in that first case, production has been complete since last November.  And there was a four-month period where the client was completing its review of the production and then creating a list of issues about what to confer there.  That was a little bit of a lull for the agency in that case, understanding that PHMPT 2 is being produced on.  And, as of June 1st, it appears that the second bucket of documents will be about a quarter of the way through the production. It does seem that that will not be completed until about June of next year.

I would just like to remind the Court that in this matter, this issue, there are already 150 records that have been identified and located as responsive to this request. If the Court is inclined to extend the stay any longer than the six months that have elapsed, plaintiff requests that the agency at least produce those already identified 75 Excel sheets and 75 emails and that the stay apply to only the additional searches and processing that needs to happen beyond those records.

MR. LEVY:  If I could respond.

THE COURT:  The government response to that recommendation?

MR. LEVY:  Sure.  So that was something that was true at the time that the stay was granted.  As Your Honor

recognized at that time, we can't be -- if we're going to have the stay and have it apply even candidly to all cases, we can't be doling out parts of resources here and parts of resources there.  It's part of the nature of the overwhelming burden of the PHMPT cases; that there isn't this kind of surplus personnel to deal with ad hoc this-and-that.

I would further note that at the time of the stay plaintiff's request was about 350th in the complex queue; it's moved up to 320 in the complex queue.  It's not as though at the time that we had the hearing that we were just about to do these requests but for the stay.  There was always a backlog.

Finally, it makes sense to do a review of potential responsive documents in request to a response altogether; it's more efficient.  What they're proposing would be less efficient.

THE COURT:  Well, in reference to those documents that have already been identified in reference to what's in the queue, would ordering those be processed then bump the request in this case above earlier filed or made requests?

MR. LEVY:  Absolutely, Your Honor.  Yes.

Any order to review documents in this case now we would move it ahead of the request in front of it in the queue.

THE COURT:  Do you know how much of a bump that would be?

MR. LEVY:  My understanding is that there is still about 320 cases ahead of it in the queue.  The agency has told me that they're only able to estimate.  I can't tell you that that is absolutely right, but that's roughly where I am told.

THE COURT:  Plaintiff's counsel, any response to that?

I mean, we do have a policy, at least in this District, that we do not give preference to newer filed requests over those that have already been presented to the agency; I think that's a fair process.  I think it's unfortunate that Congress enacts legislation and then doesn't provide the resources for the agency to comply with the legislation that they have adopted; that's what we have.

I have a concern about making the agency give priority to a later filed or made request over those that have already been made and have been pending, but I will hear from you in reference to that.  I mean, it's unfortunate that -- I will be very blunt -- some judges just seem to be irrational when it comes to orders that they issue and don't take into account that there are other courts in this country other than just them.

But I will hear from you.

MS. BREHM:  Yes.  I appreciate that, Your Honor, and I agree it is unfortunate.  But it also is in violation of FOIA that the agency has queued 350 or 320 complex requests long that are taking 18 to 24 months, at a bare minimum, to get any documents processed for those requests, and that is exactly the status of at least the Seber [sic] portion of FDA that every request that gets submitted gets an 18 to 24 months' estimated date of completion at this point.

I am unaware of anything that prohibits the agency from producing those 150 documents.  And I am also unaware if they take into account that -- I know that multiple requesters have requests out for the same exact documents that our client is seeking here; and, in addition, there are other lawsuits about it.

So while, on the one hand, you could view it as unfair that it's hopping a queue that is already violating FOIA, it also could satisfy more than just this client's specific request in this litigation if those documents were to be disclosed and made public.

THE COURT:  Government counsel, is there any legitimacy to what's been indicated; that if you process these it really wouldn't be putting this case ahead of others since there are other cases filed earlier that are requesting the same documents?

I don't know if you have the capacity to make that type of assessment as to whether other cases that are higher in the queue -- whether those same documents are the documents requested here?

MR. LEVY:  So I know that there is one other case that sought at least similar documents, and that -- I don't know that it's earlier filed; I have to look.

But I do know that, at the outset of this litigation, we were trying to consolidate this case and other cases and plaintiff opposed consolidation.  So it seems a little strange for them to say:  Well, there is efficiency in doing this because it satisfies some other cases as well.

THE COURT:  Is that correct, that there was an objection to consolidation with other cases where there were analogous requests made?

MS. BREHM:  There was.  But those other cases -- it was two additional cases, and their requests were far broader.  This was a subset of those.  And so our hesitation for that was exactly that we would be in the position that we're in now; that those broader requests would take even longer for the agency to process and that we would be stuck in an 18-month stay.  Because ours was the most narrow, we thought it made sense to go and litigate that separately. But this request, again, is part of that; and these

documents that are responsive here would be responsive to those folks as well.

THE COURT:  Does the government know, is there any way to assess whether the documents -- those that have been identified already -- whether there are other requests that are analogous to the requests here and are higher in the queue and, therefore, if those are processed, that you would be processing, essentially, the documents that are identified here already?

MR. LEVY:  Your Honor, that is something that I don't know.  I am not prepared to answer.

Obviously, if you want, I could kind of get off the line or briefly call agency counsel to see if there is any awareness of that.

THE COURT:  If you could do that, I would appreciate it.

MR. LEVY:  Thank you.  All right.

If you would hold, I will call and be right back.

THE COURT:  Thank you.

(Whereupon, a recess was taken.)

MR. LEVY:  Hi.  Have I rejoined the hearing?

THE COURT:  Yes.

MR. LEVY:  Thank you, Your Honor.  I am terrible with this iPhone.  I never know what is going to happen.  I appreciate it.

So I just spoke with agency counsel.

So we are aware of this other request because of existing litigation.  I mean, we are also aware that that case is stayed for the same reason as this case.

I am not sure if that case is ahead of this case in the queue.  But, in any event, it would still jump over a lot of the cases in the queue.

I think, more specifically answering Your Honor's question, we don't have kind of an inventory of the cases that are ahead of it so that we would go through it and assess whether this would satisfy any others in addition to the one request we know about.

What plaintiff represented would only partially represent -- partially satisfy the other one.  I think we only partially satisfied this one.

Finally, to the extent that that -- any request ahead of this one in the queue comes up and we process these records, we can give them to this plaintiff at that time rather than jump everyone.

THE COURT:  Let me just ask.

As I understand, my law clerk is telling me that plaintiff's counsel in this case is also plaintiff's counsel in the cases out in Texas; is that right?

MS. BREHM:  Yes.  That is correct, Your Honor. It's a different client, but we are counsel of record.

THE COURT:  I don't know the answer to this, and maybe you can respond to it.  Then why weren't these cases filed out there and the other cases filed here?

MS. BREHM:  It's a different client, Your Honor.

THE COURT:  What impact does that have on where you can file?

MS. BREHM:  Well, one of the choices of venue is where the plaintiff is located.  Our PHMPT client is in Texas.  We anticipated it had numerous hearings there that they wanted to attend so we filed those two cases there.

This case, like the majority of our FOIA cases, are filed in the D.C. Circuit.

THE COURT:  Where is the plaintiff in this case located?

MS. BREHM:  In Austin, Texas.

THE COURT:  So the plaintiff in this case is also in Texas?

MS. BREHM:  Yes.  In Austin.

THE COURT:  Well, I am a little perplexed then as to why this case wasn't filed there.

It seems to me you're defeating your purpose of trying to get the documents expeditiously if you file out there regarding plaintiffs that live in Texas but then you file here for plaintiffs who also live in Texas.

MS. BREHM:  Your Honor, I am not sure why --

THE COURT:  It seems to me you are creating a conundrum for yourself.

MS. BREHM:  It's not clearly why -- because it's different where we file.  You know, the FOIA statute has the time line it has within it and our kind of the venue --

THE COURT:  I understand what you are saying.  But my point is:  I don't understand why you are filing certain cases out there when you have plaintiffs who live in Texas and other cases here where you have the same other plaintiffs who also were in Texas.  I mean, I guess you can do that if venue is proper here; but it's just a little perplexing to me as to why you would do that.

MS. BREHM:  Well, D.C. -- we'll tell you D.C. is sort of the hub for FOIA typically; that the FOIA cases tend to move a little bit quicker through the D.C. District. That is why --

THE COURT:  Why didn't you file those other cases here then?

MS. BREHM:  Because our clients specifically requested that we file them where they're located.  It's a membership group, so there are numerous folks who are all medical professionals and health professionals who wanted to have the ability to attend the hearings for those cases in person.  It would have been very difficult for them to coordinate and get a large number of them to come to D.C.

for hearings; that was a client request.

But, again, I am unclear why the outcome of anything we're litigating shouldn't be different depending on the jurisdiction that we're in.

THE COURT:  Well, I mean you have a choice to make and you have to live with the choice.  But it does, I think, to me, complicate the situation where cases are filed out there and cases are filed here, and they could have been filed at the same location.

MS. BREHM:  Well, they couldn't have been, Your Honor --

THE COURT:  Don't interrupt me when I'm talking, please.  I try to be respectful of you and you are going to be respectful of me, Counsel.

MS. BREHM:  I apologize, Your Honor.

THE COURT:  So I mean -- I don't know what to do. I can't force, you know, a defendant to do what they don't have the capacity to do.

Like my mother used to tell me when I was growing up, you can't get blood out of a turnip because there is no blood there.

It seems to me, again, it's a conundrum that's being created because of the unconscionable order that's been issued out there in Texas, and that order was issued before any order I would be issuing.

I am not prepared, even though I think the order out there is unconscionable regarding the number of documents that are being ordered to be processed and produced -- I just am not going to do what I would not want a judge to do to me in some other jurisdiction, and that is superimpose their orders over mine if theirs was being issued after mine was issued.

I don't think I can do anything other -- at this point, with the resources that the agency has, other than to grant the stay.  Hopefully -- I don't know, if they get more people on board as they indicate they're conceivably trying to do, then maybe we'll be in a better position six months from now to assess how we proceed.

I would, however, order that the government make an effort, if it's possible, to determine whether any similar documents that are being requested in other cases also encompass the documents being requested here, at least as far as those documents that have already been identified. And if the government is able to do that, that these be processed at the same time as other documents are being processed if those requests in those other cases are, in fact, higher in the queue than this one; I think that's the best I can do.  I mean, I just can't force the agency to do what it doesn't have the capacity to do.

I will grant a stay for an additional six months,

and we'll continue this matter until then.  I would require the government, within 30 days, to advise me as to whether you can do what I have indicated, I request that you do; that is, to see if you can prepare any requests in this case, as far as those documents that have already been identified, with documents that have been requested in other cases that are higher in the queue; and if so, whether those can be processed at the same time so you can at least maybe speed up the process for the production of those 150, or whatever, documents we're talking about sooner than the stay would be lifted after the six-month period.

Okay.  I will continue the stay until -- that would take us to November -- continue until November 25th at nine o'clock.  We'll see where we are at that point.

MS. BREHM:  Thank you, Your Honor.

MR. LEVY:  Thank you, Your Honor.

THE COURT:  Thank you very much.  I will get something from government counsel within 30 days regarding what I indicated.

MR. LEVY:  Yes, Your Honor.

THE COURT:  Thank you.

(Whereupon, the proceeding concludes, 9:21 a.m.)

**CERTIFICATE**

I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings to the best of my ability.

This certificate shall be considered null and void if the transcript is disassembled and/or photocopied in any manner by any party without authorization of the signatory below.

Dated this 2nd day of June, 2024.

/s/ Elizabeth Saint-Loth, RPR, FCRR
Official Court Reporter